**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **GARY SERRANO,** | : | **CIVIL ACTION** |
| **on behalf of himself and all others** | : | |
| **similarly situated,** | : | |
|       **Plaintiffs,** | : | |
| | : | |
|   **v.** | : | |
| | : | |
| **STERLING TESTING SYSTEMS, INC.,** | : | |
|       **Defendant** | : | **NO. 07-4563** |

<u>**MEMORANDUM AND ORDER**</u>

PRATTER, J.                                                                                                   MAY 30, 2008

      In this putative class action, Plaintiff Gary Serrano, on behalf of himself and all others

similarly situated, sued Sterling Testing Systems, Inc.,[1] a credit reporting agency, pursuant to the

Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681, *et seq.*, for damages resulting from

Sterling's alleged practice of disclosing the existence of outdated arrest records to its clients.

      Sterling moves to dismiss the Complaint on the grounds that the disclosure of the

*existence* or possible existence of outdated arrest records (as opposed to disclosure of the records

themselves) does not violate the FCRA.  Mr. Serrano opposes the Motion and Sterling's

interpretation of the statute.  The dispute turns on whether FCRA only prohibits the disclosure of

the outdated records themselves, or whether the statute also prohibits disclosure of the *existence*

of such arrest records.

      As discussed more fully below, the Motion will be denied because in the absence of

certain exceptions, the plain language of the statute prohibits disclosure of the existence of arrest

---

[1] According to defense counsel, the correct name of the defendant corporation is "Sterling Infosystems Inc. *d/b/a* Sterling Testing Systems Inc."  (Def. Mot. 1.)

records.

**STANDARD OF REVIEW**

A Rule 12(b)(6) motion to dismiss tests the sufficiency of a complaint.  Conley v. Gibson, 355 U.S. 41, 45-46 (1957).  Rule 8 of the Federal Rules of Civil Procedure requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests," Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1964-65 (2007) (quoting Conley, 355 U.S. at 47).  While a complaint need not contain detailed factual allegations, the plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Id. at 1964-65 (citations omitted). Specifically, "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . ." Id. at 1965 (citations omitted).

**DISCUSSION**

In February 2007, Mr. Serrano was hired by Edens Corporation, a SEPTA subcontractor, as a paratransit driver earning an hourly wage of $8.70 in a non-salaried position.  (Compl. ¶¶ 20-21.)  As part of a routine background check, Edens Corporation hired Sterling to provide background information about Mr. Serrano.  (Id. at ¶ 22.)  In the process of preparing its report, Sterling purportedly uncovered arrest records that were more than seven years old.[2]

The FCRA, which protects the rights of consumers by regulating the practices of credit

---

[2] For the purposes of a motion to dismiss, the facts alleged in a complaint are deemed to be true.  Conley, 355 U.S. at 45-46.  Mr. Serrano alleges that the arrest records in question actually pertain to Mr. Serrano's brother, but, as confirmed during the oral argument, this error is not the basis for his claim.  (Compl. ¶ 23.)

reporting agencies, provides that a consumer report may not contain records of arrest that antedate the report by more than seven years or "[a]ny other adverse item of information, other than records of convictions of crimes, which antedate the report by more than seven years."  15 U.S.C. § 1681c(a)(2), (5).  These provisions do not apply to a consumer credit report to be used in connection with "the employment of any individual at an annual salary which equals, or which may reasonably be expected to equal $75,000, or more."  15 U.S.C. § 1681c(b)(3).

To determine whether it could include Mr. Serrano's outdated arrest records in its report, Sterling inquired of Edens Corporation whether Mr. Serrano's annual salary would be at least $75,000.  (Id. at ¶¶ 15, 24.)  The Sterling communication to Edens disclosed the existence of outdated arrest records, but neither Sterling's inquiry nor the report contained the actual records of arrest.  (Id. at ¶ 15.)  Sterling's standard inquiry contains the following language (the "Form Paragraph"):

> This applicant has an arrest/incident on his/her criminal history that is NOT a conviction, and is over 7 years old.  In accordance with Federal guidelines, we need to verify that this applicant will make at least $75,000 per year in order to make this information available to you.  If you wish to receive this information, please let us know that the applicant meets this salary threshold by emailing SalaryConfirmation@sterlingtesting.com.

(Id. at ¶ 15; Def. Mot. 8.)  Sterling does not dispute that it routinely uses this language in inquiries to its clients whenever Sterling uncovers outdated arrest records in its initial search for information.  (Def. Mot. 8.)

Mr. Serrano contends that this practice violates the FCRA because either (1) it constitutes the reporting of an outdated arrest record in violation of §1681c(a)(2), or (2) it constitutes the reporting of an outdated "adverse item of information" in violation of §1681c(a)(5).  For its part,

Sterling asserts that none of the §1681c categories prohibit the *disclosure* of the *existence* of outdated arrests records; rather, according to Sterling, only the disclosure of the records themselves is prohibited, and the language of the notice sent to prospective employers does not constitute an "arrest record."  (Def. Mot. 4.)

## I.      Does disclosure of the existence of an outdated arrest record violate §1681c(a)(2)?

Section 1681c(a)(2) provides that "no consumer reporting agency may make any consumer report containing any of the following items of information: . . . (2) Civil suits, civil judgments, and records of arrest that, from date of entry, antedate the report by more than seven years or until the governing statute of limitations has expired, whichever is the longer period." 15 U.S.C. § 1681c(a)(2).

The issue in this litigation turns on whether the statute should be read narrowly to prohibit only the disclosure of the actual records of arrest themselves, while allowing disclosure of the existence of such records; or whether the statute prohibits both types of disclosure prior to a salary determination.

The parties agree that no federal court has addressed this precise issue,[3] and the Court has not found any federal court decisions on all fours with this case.  Many courts have interpreted §1681c(a) in the context of other types of adverse information, but not arrest records.  Federal courts that have interpreted the FCRA have characterized §1681c as prohibiting outdated adverse

---

[3] Mr. Serrano cites a New York state court case, Anonymous v. Dun & Bradstreet, Inc., 40 Law Week 2162 (N.Y. Super. Ct. 1971), for the proposition that the FCRA prohibits *reference* to criminal arrests or convictions which predate the credit report by more than seven years.  See 17 A.L.R. Fed. 675 § 8 (citing Anonymous v. Dun & Bradstreet, Inc.).

information from being "disclosed,"[4] "reported,"[5] "included;"[6] "contained,"[7] or "placed"[8] in

consumer reports.  In <u>Currier v. Transunion Credit Information Co.</u>, 2008 WL 795738 (E.D.

Mich. Mar. 25, 2008) (slip op.), the district court interpreted §1681c(a) as "mandating that

_____

[4] <u>See, e.g.</u>, <u>F.T.C. v. TRW, Inc.</u>, 628 F.2d 207, 209 (D.C. Cir. 1980) (stating that the statute's provisions "forbid the *disclosure* of information older than a certain age") (emphasis added); <u>Harris v. Wal-Mart Stores, Inc.</u>, 2007 WL 3046162, at *1 (N.D. Ill. Oct. 10, 2007) (stating that the FCRA "forbid[s] the *disclosure* of consumers' credit information in specific circumstances") (emphasis added); <u>Todd v. Associated Credit Bureau Services, Inc.</u>, 451 F. Supp. 447, 449 (E.D. Pa. 1977) (noting that "the Act proscribes the *disclosure* of [adverse] information such as that involved here only where the information antedates the report by more than seven years") (emphasis added).

[5] <u>See, e.g.</u>, <u>Lendino v. Trans Union Credit Information Co.</u>, 970 F.2d 1110, 1111 (2d Cir. 1992) ("Under 15 U.S.C. § 1681c, consumer reporting agencies are prohibited from *reporting* adverse credit information which antedates the report by more than seven years.") (emphasis added); <u>Thomas v. U.S. Bank</u>, 2007 WL 764312, at *5 (D. Ore. Mar. 8, 2007) (stating that the FCRA "provides a seven year period for *reporting* most negative credit information.") (emphasis added); <u>Batdorf v. Equifax</u>, 949 F. Supp. 777, 782 (D. Hawaii 1996) (stating that "[u]nder the Act, adverse credit information may not be *reported* if it is over seven years old") (emphasis added); <u>Wiggins v. Equifax Services, Inc.</u>, 848 F. Supp. 213, 220 (D.D.C. 1993) (explaining that the FCRA "generally prohibits the *reporting* of certain categories of 'obsolete information,' such as records of arrest or conviction of a crime that antedate the report by more than seven years") (emphasis added); <u>In re Miller</u>, 335 B.R. 335, 346 (Bkrtcy. E.D.Pa. 2005) ("The FCRA prohibits the *reporting* of most adverse information which is more than seven years old.") (emphasis added).

[6] <u>See, e.g.</u>, <u>Myers v. Bennett Law Offices</u>, 238 F.3d 1068, 1074 (9th Cir. 2001) (characterizing §1681c as "limiting information that can be *included* on a credit report") (emphasis added); <u>Hovater v. Equifax, Inc.</u>, 823 F.2d 413, 417 (11th Cir. 1987) (noting "the Act protects the consumer generally by requiring that obsolete information not be *included* in consumer reports") (emphasis added).

[7] <u>See, e.g.</u>, <u>A-1 Credit & Assur. Co., Inc. v. Trans Union Credit Information Co.</u>, 678 F. Supp. 1147, 1149 (E.D. Pa. 1988) (noting that "certain information is expressly prohibited from *being contained* in consumer credit reports") (emphasis added);

[8] <u>See, e.g.</u>, <u>Vrlaku v. Citibank</u>, 2005 WL 2338852, at *4 (D.N.J. Sept. 23, 2005) ("Section 1681c of Title 15 places restrictions on the information that 'consumer reporting agencies' may *place* in any 'consumer report.'") (emphasis added).

certain information must be *deleted* after a fixed period of time." Id. at *1 (emphasis added).

Similarly, another court explained that "adverse credit information may not be *reported* if it is

over seven years old," or, in other words, "credit or consumer reporting agencies may legally

*keep* adverse credit information *on* a consumer's credit report for seven years." Fasten v. Zager,

49 F. Supp. 2d 144, 150 (E.D.N.Y. 1999) (emphasis added).  Finally, in Porter v. Talbot Perkins

Children's Services, 355 F. Supp. 174 (S.D.N.Y. 1973), a district court equated "contain" with

"refer to" in connection with the information disclosed in consumer reports.  Id. at 177.

      None of these characterizations shed unshaded light on the question of whether the term

"records of arrest" should be construed narrowly or broadly, but they do indicate an overall

consensus that the statute regulates all types of reporting and disclosure of information, not

simply the actual *production* of the documents that are the source or origin of the adverse

information.

      The commentary[9] issued by the Federal Trade Commission ("FTC")[10] likewise indicates

that the mere reporting of outdated information violates the FCRA.  16 C.F.R. Pt. 600, App. §

605 ("[M]ost adverse information more than seven years old may not be *reported*, except in

certain circumstances . . . .") (emphasis added).  In an effort to "set forth a clear, workable rule

that effectuates Congressional intent," the FTC opines that pursuant to §1681c(a), a credit

reporting agency cannot even *suggest the existence of* obsolete information.

      A consumer reporting agency may not furnish a consumer report

---

[9] The Commentary does not have the force or effect of regulations or statutory provisions. 16 C.F.R. Pt. 600, App.

[10] The FTC is the federal agency empowered by Congress to administer and enforce the FCRA. 15 U.S.C. § 1681s.

> *indicating the existence of obsolete adverse information, even if no*
> *specific item is reported.* For example, a consumer reporting
> agency may not communicate the existence of a debt older than
> seven years by reporting that a credit grantor cannot locate a debtor
> whose debt was charged off ten years ago.

Id. (emphasis added).  Moreover, the FTC has defined the term "records" as "*any information* a

consumer reporting agency has in its files *relating to* arrest, indictment or conviction of a crime."

Id. (emphasis added).[11]

Thus, both the case law and the FTC Commentary strongly suggest that merely *reporting*

*or disclosing* – without producing – obsolete information violates the FCRA.  The Court,

however, need not decide this question at this juncture because even if such disclosures do not

fall within subsection (a)(2), they nonetheless are prohibited by the statute.

## II.    Does disclosure of the existence of an outdated arrest record violate §1681c(a)(5)?

If the information disclosed in Sterling's Form Paragraph, i.e., the existence of outdated

arrest records, does not all within §1681c(a)(2), then it inescapably falls within the general catch-

all provision, §1681c(a)(5), which prohibits disclosure of "[a]ny other item of adverse

information" that is over seven years old.

Sterling asserts that §1681c(a)(5)'s "other adverse information" category is mutually

exclusive of information covered by the more specific categories that precede it.  According to

Sterling, inasmuch as the statute expressly covers arrest records in §1681c(a)(2), the Court need

not determine whether such arrest records may also constitute "other adverse information."  But

---

[11] Mr. Serrano also cites In re Equifax, Inc., 96 F.T.C. 844 (1980) (cited in National
Consumer Law Center, *Fair Credit Reporting* (6th ed. 2006)).  The parties dispute whether this
case is applicable and/or persuasive.  Disregarding this case, which is not binding on this Court,
the Court still finds Sterling's proposed interpretation of the statute unpersuasive.

this approach is inconsistent with Sterling's contention that information about the existence of an arrest record is not an actual "arrest record" per se, and thus falls outside §1681c(a)(2).  Sterling cannot have it both ways.  Either disclosure of the existence of arrest records falls within the prohibition against inclusion of "records of arrest" in a report or, if not, such information must be evaluated under the prohibition on "other adverse information."  A certain type of information cannot be included in and excluded from the same provision at the same time.

Thus, if it is determined that subsection (a)(2) is limited to actual records of arrest, then the Court must determine whether the *existence* of an arrest record constitutes an "item of adverse information."  The term "adverse information" has been defined as

> information which may have, or may reasonably be expected to have, an unfavorable bearing on a consumer's eligibility or qualifications for credit, insurance, employment, or other benefit, including information which may result, or which may be reasonably expected to result, in a denial of or increased costs for such benefits.

In re Miller, 335 B.R. at 346 -347 (quoting Equifax, Inc. v. Federal Trade Commission, 678 F.2d 1047, 1050 (11th Cir. 1982)).  Certainly, an arrest record "may reasonably be expected to have[] an unfavorable bearing on a consumer's eligibility or qualifications" for employment, perhaps particularly so where, as here, the reason for the arrest is not given.  The information concerning the existence of outdated arrest records, if excluded by a narrow reading of subsection (a)(2), falls squarely within subsection (a)(5).

## III.    The Salary Exception

The prohibitions against inclusion of outdated adverse information in consumer reports do not apply to a consumer credit report to be used in connection with "the employment of any individual at an annual salary which equals, or which may reasonably be expected to equal

8

$75,000, or more." 15 U.S.C. § 1681c(b)(3).

Sterling contends that there is no explicit requirement that the salary determination be made early in the investigation.[12]  However, the timing of the salary determination is irrelevant. While the §1681c(a) prohibitions do not apply to consumer credit reports used in connection with employment at an annual salary of $75,000 or more, then almost by definition, they must apply at all times prior to the salary determination.  There is no justification in the plain language of the statute for disclosing outdated adverse information prior to the salary determination.  Employers, as sophisticated consumers of credit reports, are perfectly capable of understanding the trade-off that may result from delaying a salary decision.  Until the employer determines the applicable salary, any disclosure or reporting of outdated adverse information is subject to the prohibitions of §1681c(a).

**CONCLUSION**

The Motion to Dismiss will be denied because Mr. Serrano has stated a claim under the FCRA for which relief can be granted.  An order consistent with this Memorandum follows.

BY THE COURT:

S/Gene E.K. Pratter
GENE E.K. PRATTER
United States District Judge

---

[12] Sterling also asserts a "public safety" rationale as grounds for construing §1681c(a) narrowly and permitting early disclosure of the existence of outdated arrest records.  The Court, however, finds this argument unpersuasive because the articulated statutory exceptions to the prohibition against disclosure of obsolete adverse information are linked exclusively to higher paying jobs and high-value transactions, with no reference or connection to other employment, such as teaching or elderly care, that may fall below the salary threshold, but nevertheless require a high degree of public trust.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **GARY SERRANO,** | : | **CIVIL ACTION** |
| **on behalf of himself and all others** | : | |
| **similarly situated,** | : | |
|       **Plaintiffs,** | : | |
| | : | |
|    **v.** | : | |
| | : | |
| **STERLING TESTING SYSTEMS, INC.,** | : | |
|       **Defendant** | : | **NO. 07-4563** |

<u>**ORDER**</u>

AND NOW, this 30th day of May, 2008, upon consideration of Defendant's Motion to Dismiss (Docket No. 8), Plaintiff's response thereto (Docket No. 12) and Defendant's reply (Docket No. 14), and following oral argument held on May 29, 2008, it is hereby ORDERED that the Motion is DENIED as outlined in the accompanying Memorandum.

IT IS FURTHER ORDERED that Defendant shall file and serve an answer to the Complaint within 20 days of the date of this Order.

BY THE COURT:

<u>S/Gene E.K. Pratter</u>
GENE E.K. PRATTER
United States District Judge