**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **GARY SERRANO, on behalf of** | : | **CIVIL ACTION** |
| **himself and all others similarly situated,** | : | |
| **Plaintiffs,** | : | **NO. 07-4563** |
| | : | |
| **v.** | : | |
| | : | |
| **STERLING TESTING SYSTEMS, INC.,** | : | |
| | : | |
| **Defendant.** | : | |

**MEMORANDUM AND ORDER**

PRATTER, J.                                                                                    MAY 7, 2010

In this putative class action, Gary Serrano, on behalf of himself and all others similarly

situated, sued Sterling Testing Systems, Inc. ("Sterling"),[1] a national employment consumer

credit reporting agency, pursuant to the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681,

et. seq., for damages resulting from Sterling's alleged practice of disclosing the existence of

outdated arrest records of potential employees to Sterling's clients. After various pretrial

activities, the parties negotiated a potential resolution of the case. Mr. Serrano filed a Motion for

Final Approval of Settlement, as well as a Motion for Attorneys' Fees and Unreimbursed Costs,

and the Court held a fairness hearing on December 16, 2009. For the reasons that follow, the

Court now grants both motions.

I.        BACKGROUND

A.        History of the Litigation

Mr. Serrano's Complaint, filed on October 30, 2007, alleges that Sterling willfully

violated the FCRA through its practice of reporting outdated and adverse information concerning

---

[1] According to defense counsel, the correct name of the defendant corporation is "Sterling
Infosystems Inc. d.b.a. Sterling Testing Systems Inc." See Def. Mot. to Dismiss at 1.

arrests to prospective employers of Plaintiffs, which information Sterling was required to

exclude from the reports it sells to employers and prospective employers.[2]  The case was filed as

a class action only for statutory damages under the FCRA.  On January 28, 2008, Sterling filed a

motion to dismiss, in which it contested the essence of Plaintiffs' theory of liability.  Full

briefing ensued, and the Court heard oral argument.  The Court denied Sterling's motion on May

30, 2008, and issued an opinion on a liability question of first impression.  See Serrano v.

Sterling Testing Systems, Inc., 557 F.Supp. 2d 688 (E.D. Pa. 2008).  Sterling filed an Answer to

the Complaint on June 17, 2008, and the parties proceeded with written discovery and

depositions.

On January 27, 2009, the Court entered an Order to allow the parties to pursue resolution

of the matter through private mediation.  The parties proceeded to meet with an experienced

private mediator for a full day session on March 12, 2009.  The case did not settle that day, but

the parties continued to negotiate between themselves.  See Mot. for Final Approval at 4.

Subsequently, the Court issued additional scheduling orders setting forth various case

management deadlines, including one for class certification motions.  The parties then met for a

second time with the mediator on June 4, 2009.  Id.  At that time, with the assistance of the

mediator, the rough parameters of a settlement were reached.  Id.  In the weeks that followed, the

parties continued to negotiate the details and nuances required for documenting a classwide

settlement, including the notice procedures, release issues and Sterling's agreement to change its

practice.  Id.  The parties eventually reached a proposed settlement, and submitted their

Settlement Agreement to the Court for preliminary approval.

---

[2]  The FCRA regulates, inter alia, the collection, maintenance, and disclosure of information by
credit reporting agencies.

B.    The Settlement Agreement

The Settlement Agreement contemplates certification of the following Settlement Class:

> All persons in the United States and its territories, beginning two years prior to the filing of this Complaint and continuing through the time of judgment of  this action, who were the subject of a consumer report sold by Defendant in connection with their employment that contained language substantially similar to the Form Paragraph in the letter attached to the Complaint, with respect to the following cause of action: for statutory damages only for willful violation of section 1681c of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq*.

See Settlement Agreement, App'x 1 to Mot. for Prelim. Approval, at 3.

According to the Settlement Agreement, Sterling has paid the amount of nine hundred seventy-five thousand dollars ($975,000.00) into an account to be administered by Sterling pending final approval of the settlement ("Settlement Fund").  Id.  The parties have agreed that this sum shall be used to satisfy the awards to each claiming Class member (as defined in the Settlement Agreement), as well as Mr. Serrano's individual settlement award and Mr. Serrano's claim for reasonable attorney's fees and costs.  Id. at 3-5.

The Settlement Agreement provides that the amount of each claiming Class member's *pro rata* share of the remaining balance of the Settlement Fund (following payment of the award to the Mr. Serrano and his reasonable fees and costs) will be determined through the following formula: claiming Class member's *pro rata* share = balance of Settlement Fund divided by total number of claiming Class members.  Id. at 5.  Each share shall be no more than one thousand dollars ($1,000.00).[3]  Id.  No portion of the Settlement Fund shall revert to Sterling or its insurer. Id. at 6.  The parties have agreed that any residue of the Settlement Fund remaining for any reason, including checks that are not negotiated or are returned and remain undeliverable after a

---

[3]  Class counsel conservatively estimates that each claiming Class member's recovery will amount to approximately $500 to $1000.  See Mot. for Final Approval at 6.

date set by the Court, shall be used to create a *cy pres* fund.  Id.  This *cy pres* fund shall be donated, as designated by Class Counsel, to the Philadelphia Volunteers for the Indigent Program ("VIP").  Id.  The Settlement Administrator shall forward the funds directly to VIP, one hundred ten (110) days after the checks are mailed to the Class members and will provide proof of such payment to Class Counsel.  Id.  In addition, Sterling will fund all administration expenses (class list, notice, mailing, administration, inquiries, issuance of checks, etc.).  Id.

Further, Mr. Serrano will receive, in addition to his share as a claiming Class member, the sum of one thousand dollars ($1,000.00) in full settlement and satisfaction of his individual claims and as compensation for his services rendered to the Class.  Id. at 4-6.  The Settlement Agreement states that this award is subject to approval by the Court, to which Sterling will not object.  Id.

Sterling has agreed to pay Mr. Serrano's reasonable attorney's fees and costs out of the Settlement Fund, subject to the Court's approval.  Id. at 7.  Further, the notices sent out to the Class set forth that Class Counsel will petition for an award of fees and costs in an amount not to exceed 35% of the Settlement Fund (made by way of a separate motion).  Id. at 4-6.

According to the Settlement Agreement, Sterling has ceased the allegedly unlawful reporting practice challenged in the Complaint, and Plaintiffs have secured Sterling's agreement to forever refrain from engaging in the practice in the future.  Id. at 7.

The parties specifically have agreed that because the Settlement Class is comprised of members asserting claims for statutory damages only, claims for actual damages are specifically excluded from release, and the Final Judgment and Order will so reflect.  Id. at 8.  Thus, Class members may still pursue actual damages, if they have any, without having to opt-out of the Settlement.  However, as Plaintiffs' counsel confirmed at the fairness hearing, the Settlement

4

Agreement extinguishes any claims that Class members may have for punitive damages under the FCRA. See 12/16/2009 Hr'g Tr. at 6-8.

C.     Preliminary Approval, Notice and Responses

On August 26, 2009, the Court preliminarily certified the Settlement Class described in the Settlement Agreement, and scheduled a final fairness hearing for December 16, 2009. Pursuant to the Settlement Agreement and the Preliminary Approval Order, notices were sent out to Class members regarding the pendency of this action; the terms of the proposed settlement; the opportunity to opt out, object or participate; and the date of the fairness hearing. See Mot. for Final Approval at 2-3. These notices were sent out via first class mail on September 30, 2009, and also through an internet website established by Class Counsel on the same date. Id. The notices informed Class members of their rights to exclude themselves from the Class, how to object to the settlement and provided a claim form to be submitted to receive the funds available under the settlement. Id. The notices also expressly advised Class members that Mr. Serrano would be applying for an award of attorney's fees and expenses not to exceed 35% of the Settlement Fund. Id.

The deadline for requesting exclusion from the Settlement Class and for filing objections to the settlement was October 30, 2009, see id. at 3, and the fairness hearing was held on December 16, 2009. As of the date of the fairness hearing, no Settlement Class members had requested to be excluded from the Class or had objected to the settlement. See 12/16/2009 Hr'g Tr. at 13.

D.     Attorney's Fees and Expenses

Class counsel have requested attorneys' fees and reimbursement of expenses in the total amount of $340,900.00. See Mot. For Fees, Expenses and Award to Representative Plaintiff

at 4.

II.     DISCUSSION

"A court presented with a joint request for approval of a class certification and settlement must separate its analysis of the class certification from its determination that the settlement is fair." Boone v. City of Philadelphia, 668 F.Supp. 2d 693, 705 (E.D. Pa. 2009) (citing In re Insurance Brokerage Antitrust Litig., 579 F.3d 241, 257-58 (3d Cir. 2009). To certify a class under Federal Rule of Civil Procedure 23, a court must determine that the requirements of all four subsections of Rule 23(a) are satisfied, and the requirements of at least one subsection of Rule 23(b) are satisfied. See Baby Neal v. Casey, 43 F.3d 48, 55 (3d Cir. 1994).

A.     Federal Rule of Civil Procedure 23(a)(1)

Rule 23(a) requires the following:

(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

1.     The Numerosity Requirement

"No single magic number exists satisfying the numerosity requirement." Behrend v. Comcast Corp., 245 F.R.D. 195, 202 (E.D. Pa. 2007) (internal quotation omitted). However, the Third Circuit Court of Appeals often embraces classes of 40 or more. See Stewart v. Abraham, 275 F.3d 220, 226-27 (3d Cir. 2001). Here, the Settlement Class consists of 10,874 individuals. See Mot. for Final Approval at 7. As of November 30, 2009, 639 individuals already had submitted claims forms. Id. at 18. Because joinder of such a large class is impracticable, the

6

Plaintiffs have satisfied the numerosity requirement.

### 2. Commonality

To satisfy the commonality requirement, plaintiffs must show the existence of at least one question of law or fact common to the class. Fed. R. Civ. P. 23(a); In re Prudential Ins. Co. of Am. Sales Practice Litig. Agent Actions, 148 F.3d 283, 310 (3d Cir. 1998). The commonality threshold is low, Georgine v. Amchem Prods., Inc., 83 F.3d 610, 627 (3d Cir. 1996), and does not require "an identity of claims or facts among class members," Johnston v. HBO Film Mgmt, 265 F.3d 178, 184 (3d Cir. 2001). Moreover, "the existence of individualized issues in a proposed class action does not per se defeat commonality." Brooks v. Educators Mut. Life Ins. Co., 206 F.R.D. 96, 101 (E.D. Pa. 2002) (citing Johnston, 265 F.3d at 191 (3d Cir. 2001)).

In this case, there is a legal issue common to all class members, namely whether Sterling's conduct as alleged constitutes a willful violation of the FCRA. Inasmuch as Sterling's policies and practices with respect to such conduct were essentially uniform with regard to these issues, the Court concludes that the Rule 23(a)(2) commonality requirement is satisfied.

### 3. Typicality Requirement

Rules 23(a)(3) and 23(a)(4) require that the claims or defenses of the named plaintiff be typical of the class and that the named plaintiff be in a position to fairly and adequately protect the interests of the class. This requirement is "designed to align the interests of the class and the class representatives so that the latter will work to benefit the entire class through the pursuit of their own goals." In re Prudential Ins. Co. of Am. Sales Litig., 148 F.3d at 311. See also id. at 312 (holding that "the various forms [the class representatives'] injuries may take do not negate a finding of typicality, provided the cause of the injuries is some common wrong") (internal citation omitted).

To evaluate typicality, the Court must inquire "whether the named plaintiffs' claims are typical, in common-sense terms, of the class, thus suggesting that the incentives of the plaintiffs are aligned with those of the class." Beck v. Maximus, Inc., 457 F.3d 291, 295-96 (3d Cir. 2006) (internal quotations omitted). "The typicality requirement is intended to preclude certification of those cases where the legal theories of the named plaintiffs potentially conflict with those of the absentees." Georgine, 83 F.3d at 631 (internal citation omitted). "The inquiry assesses whether the named plaintiffs have incentives that align with those of absent class members so that the absentees' interests will be fairly represented." Id. (internal citation omitted).

Here, the claims of the class representative are similar to those of the other members of the proposed classes. Mr. Serrano is a member of the Class, has the same interest in resolving the issues as all other members of the Class, and his claims are typical of all members of the Class. All of the claims arise from and challenge the same course of allegedly unlawful conduct, namely, Sterling's practice of reporting outdated arrest data on credit reports, and are based on the same legal theories as those of the Class members. The essence of each putative Class member's claim is precisely the same.[4] This is sufficient to satisfy the typicality requirement of Rule 23(a)(3).

4. Adequacy

Class representatives must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The adequacy inquiry "serves to uncover conflicts of interest between named parties and the class they seek to represent." Beck, 457 F.3d at 296 (internal quotations

---

[4]  As stated previously, this case was filed as a class action for statutory damages only under the FCRA. Therefore, the settlement under consideration would not affect individual Class members' rights to pursue actual damages (which may vary among Class members), although, as stated above, any rights to pursue punitive damages would be extinguished.

omitted). It "assures that the named plaintiffs' claims are not antagonistic to the class and that the attorneys for the class representatives are experienced and qualified to prosecute the claims on behalf of the entire class." Id. (internal quotation omitted). Thus, the Court "must determine whether the representatives' interests conflict with those of the class and whether the class attorney is capable of representing the class." Johnston, 265 F.3d at 185 (internal citation omitted). "The Court of Appeals for the Third Circuit has noted that the [typicality and adequacy] inquiries tend to merge because both evaluate the relation of the claims and the potential conflicts between the class representatives and the class in general." Boone, 668 F. Supp. 2d at 706 (citing Beck v. Maximus, Inc. 457 F.3d 291, 296 (3d Cir. 2006)).

The Court concludes that class counsel is adequate. Class counsel are qualified and experienced, and have vigorously pursued this lawsuit, successfully defeating a motion to dismiss based on a novel question of law and ably representing the Class members. Counsel have also demonstrated that they are appropriately mindful of the applicable professional responsibility duties. Turning to the named representative, Mr. Serrano fairly and adequately represents the interests of the Class. He has no interests that are antagonistic to the interests of the Class, and there are no actual or apparent conflicts of interest between Mr. Serrano and the class. Accordingly, the Court concludes that the adequacy requirement is satisfied.

B.    Federal Rule of Civil Procedure 23(b)

Having determined that the requirements of Rule 23(a) are met, the Court must consider whether the requirements of at least one subsection of Rule 23(b) are met. Here, certification is sought under Rule 23(b)(3), which permits class actions where "the court finds that the questions of law or fact common to Class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and

efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). These requirements are commonly separated into the so-called "predominance" and "superiority" requirements. See In re Ins. Brokerage Antitrust Litig., 579 F.3d 241, 257-58 (3d Cir. 2009).

### 1.    The Predominance Requirement

To evaluate the predominance requirement, a court must determine whether common questions of law or fact predominate over any questions affecting only individual members. See In re Hydrogen Peroxide Antitrust Litig., 552 F.3d 305, 311-12 (3d Cir. 2008). The predominance requirement  is normally satisfied where plaintiffs have alleged a common course of conduct on the part of the defendant. See e.g., In re Prudential Ins. Co. of Am. Sales Litig., 148 F.3d at 314-315. Here, Mr. Serrano has alleged a common course of conduct by Sterling. All Class members, by definition, were subjected to the same practice. The predominant - indeed, the dispositive - issue here is whether Sterling willfully violated the FCRA by reporting outdated arrest records on the credit reports of Class members. The predominance requirement is met.

### 2.    The Superiority Requirement

To meet the superiority requirement, Plaintiffs must show that a class action, rather than individual litigation, is the best method for achieving a fair and efficient adjudication of the controversy. See Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 259 F.3d 154, 191 (3d Cir. 2001). Here, a class action is superior[5] to other available methods because a class resolution

---

[5] Several factors are relevant to the superiority inquiry: "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3). In effect, "[t]he superiority requirement asks the court to balance, in terms of fairness and efficiency, the merits of a class action against those of alternative available methods of adjudication." In re

of the issues described above outweighs the difficulties in management of separate and

individual claims, and allows access to the courts for those who likely would not gain such

access standing alone - particularly in light of the relatively modest amount of statutory damages

available under the FCRA.  In many cases, courts have recognized that Rule 23(b)(3)

certification is particularly appropriate for consumer claims such as those asserted here.  Weiss

v. Regal Collections, 385 F.3d 337, 345 (3d Cir. 2004) ("[r]epresentative actions … appear to be

fundamental to the statutory structure of [federal debt collection law]").  See also, e.g., Amchem

Prods. v. Windsor, 521 U.S. 591, 617 (1997) ("The policy of the very core of the class action

mechanism is to overcome the problem that small recoveries do not provide the incentive for any

individual to bring a solo action prosecuting his or her rights").  On balance, the Court

determines that the superiority requirement is satisfied.

C.      Notice

Class members must be given the best notice practicable under the circumstances,

including individual notice to all potential Class members that can be identified through

reasonable effort.  See Fed. R. Civ. P.  23(c)(2)(B).   Notice

> must, in clear, concise and plain language, state: (i) the nature of the action; (ii) the
> definition of the class certified; (iii) the class claims, issues or defenses; (iv) the class
> member's right to enter an appearance by an attorney; (v) the class member's right to be
> excluded from the class; (vi) the time and manner for requesting exclusion; and (vii) the
> binding effect of settlement on class members.

Id.  "A court must determine that notice was appropriate before evaluating the merits of the

settlement itself."  Boone, 668 F.Supp. 2d at 709 (citing In re Prudential Ins. Co. of Am. Sales

Litig., 148 F.3d at 326-27).   Here, the notice met all the requirements of Rule 23(c)(2)(3).   It

detailed the Class claims, the proposed settlement, and the Class members' right to object or be

_____

Prudential Ins. Co. of Am. Sales Litig., 148 F.3d at 316 (internal quotations omitted).

excluded from the settlement. The notice also informed Class members of their opportunity to be heard at the fairness hearing, and stated that the settlement would be binding on Class members who did not opt out of it

Individual notice forms were mailed to almost 11,000 individuals. For those forms that were returned as undeliverable, Sterling used a locator database to try to find alternate addresses for the recipients, and then re-sent the forms to the alternate addresses. See Mot. for Final Approval at 7; 12/16/2009 Hr'g Tr. at 15. Notice was also provided by way of publication on a website. See Mot. for Final Approval at 7; 12/16/2009 Hr'g Tr. at 14. Because the notice was widely disseminated through individual notices and online publication, the Court determines that the notice given meets the requirements of Rule 23(c)(2)(B).

     D.     Final Approval: Whether the Settlement is Fair, Reasonable and Adequate

To grant final approval, the Court must conclude that the proposed settlement is fair, reasonable and adequate. In re Brokerage Antitrust Litig., 579 F.3d at 258; Fed. R. Civ. P. 23(e). Trial courts generally are afforded broad discretion in determining whether to approve a proposed class action settlement. Eichenholtz v. Brennan, 52 F.3d 478, 482 (3d Cir. 1995). This discretion is conferred in recognition that "[the] evaluation of [a] proposed settlement in this type of litigation . . . requires an amalgam of delicate balancing, gross approximations and rough justice." City of Detroit v. Grinnell Corp., 356 F. Supp. 1380, 1385 (S.D.N.Y. 1972), aff'd in part and rev'd in part on other grounds, 495 F.2d 448 (2d Cir. 1974). Thus, the Court considers whether the proposed settlement is within a "range of reasonableness" that experienced attorneys could accept in light of the relevant risks of the litigation. See Walsh v. Great Atlantic and Pacific Tea Co., 96 F.R.D. 632, 642 (D.N.J.), aff'd, 726 F.2d 956 (3d Cir. 1983). In determining what falls within this range, the Court also bears in mind "the uncertainties of law

12

and fact in any particular case and the concomitant risks and costs necessarily inherent in taking

any litigation to completion . . ." Newman v. Stein, 464 F.2d 689, 693 (2d Cir. 1972).

The Third Circuit Court of Appeals has set forth nine factors to be considered when

determining the fairness of a proposed settlement:

> (1) the complexity, expense and likely duration of the litigation;(2) the reaction of
> the class to the settlement; (3) the stage of the proceedings and the amount of
> discovery completed; (4) the risks of establishing liability; (5) the risks of
> establishing damages; (6) the risks of maintaining the class action through trial;
> (7) the ability of the defendants to withstand a greater judgment; (8) the range of
> reasonableness of the settlement fund in light of the best possible recovery; (9) the
> range of reasonableness of the settlement fund to a possible recovery in light of all
> the attendant risks of litigation…

Girsh v. Jepson, 521 F.2d 153, 157 (3d Cir. 1975) (internal quotations and punctuation marks

omitted); In re Prudential Ins. Co. of Am. Sales Litig., 148 F.3d at 317.[6]  Each of these factors

will be discussed in turn.

1.     The Complexity, Expense and Likely Duration of the Litigation

The first Girsh factor weighs in favor of this settlement.  Plaintiffs claim that Sterling

willfully violated the FCRA by disclosing the existence of outdated arrest records to its clients.

This claim involves issues that have not been directly addressed by any courts or juries, as well

as issues for which new law arguably has developed.  See Serrano v. Sterling Testing Systems,

Inc., 557 F.Supp. 2d 688 (E.D. Pa. 2008); Safeco Ins. Co. of Am. v. Burr, 551 U.S. 47, 57 (2007)

(discussing "willfulness" under FCRA); Edwards v. Toys "R" Us, 527 F. Supp. 2d 1197, 1208-

---

[6]  A settlement represents the result of a process by which opposing parties attempt to weigh and
balance the factual and legal issues that neither side chooses to risk taking to final
resolution.  Therefore, courts have given considerable weight to the views of experienced
counsel as to the merits of a settlement.  See Cotton v. Hinton, 559 F.2d 1326, 1330 (5th Cir.
1977); Lake v. First Nationwide Bank, 900 F. Supp. 726, 732 (E.D. Pa. 1995) ("Significant
weight should be attributed to the belief of experienced counsel that settlement is in the best
interest of the class") (internal quotation omitted).

13 (C.D. Ca. 2007). Such issues may well prompt extensive motion practice by the parties. Even if the case proceeded to trial, achieving a result would likely be a lengthy and expensive process. Avoidance of this unnecessary expenditure of time and resources benefits all parties, and weighs in favor of approving the settlement. See In re General Motors Pick-Up Trust Fuel Tank Products Liab. Litig., 55 F.3d 768, 812 (3d Cir. 1995) (concluding that lengthy discovery and ardent opposition from the defendant with "a plethora of pretrial motions" were facts favoring settlement, which offers immediate benefits and avoids delay and expense).

2.    The Reaction of the Class to the Settlement

As set forth above, notice was provided to Class members by first-class mail and publication on the internet, advising them of the terms of the settlement and their right to exclude themselves from the Class. The deadline for Class members to exclude themselves from the settlement and/or object to it was October 30, 2009. As of December 16, 2009 - the date of the final fairness hearing, and long after the deadline for exclusion had passed - *not one* Class member had exercised the right to opt out or had objected to the proposed settlement. This is persuasive evidence of the proposed settlement's fairness and adequacy. See In re Cendant Corp. Prides Litig., 264 F.3d 201, 234-35 (3d Cir. 2001) (low number of objectors and opt-outs strongly favors settlement).[7]

3.    The Stage of the Proceedings and the Amount of Discovery Completed

The third Girsh factor also weighs in favor of settlement. As discussed above, this action has been actively litigated from the beginning. Shortly after the case commenced, Sterling filed

---

[7] In theory, this lack of objections or exclusions could suggest not that the settlement *is adequate*, but that *notice* was *inadequate*, such that Class members were never aware of their rights to be excluded or opt out. The Court addressed this possibility with counsel at the final fairness hearing, see 12/16/2009 Hr'g Tr. at 13-15, and is satisfied that inadequate notice is not a concern in this case.

a motion to dismiss the Complaint. Full briefing ensued, which involved previously undetermined legal issues under the FCRA. The Court held oral argument and subsequently denied the motion to dismiss. The parties engaged in formal written discovery and deposition practice and eventually agreed to mediate. According to counsel, the settlement negotiations were adversarial and somewhat protracted. Only after two separate sessions with the mediator and numerous telephonic conferences did the parties arrive at the proposed settlement.

Examining the record as a whole, it is clear that the parties did not settle until after the case had reached the stage where "the parties certainly [had] a clear view of the strengths and weaknesses of their cases." Bonett v. Education Debt Services, Inc., No. 01-6528, 2003 U.S. Dist. LEXIS 9757, at *17 (E.D. Pa. May 9, 2003) (quoting In re Warner Communications Sec. Litig., 618 F. Supp. 735, 745 (S.D.N.Y. 1985), aff'd, 798 F.2d 35 (2d Cir. 1986)); see also Bell Atlantic Corp. v. Bolger, 2 F.3d 1304, 1314 (3d Cir. 1993) (settlements reached after discovery are more likely to reflect the true value of the claims at issue). This weighs in favor of approving the settlement.

### 4. The Risks of Establishing Liability

To prevail at trial, Plaintiffs would need to succeed on their claims that Sterling willfully violated the FCRA by including reports of arrest records on the credit reports of Class members. Even assuming arguendo that its practice did violate the FCRA, Sterling has continually and vigorously asserted that its practice was not willful within the meaning of the standard enunciated by the Supreme Court in Safeco. While Plaintiffs may believe that Sterling's activity violated the FCRA as set forth in the Complaint, there is always a risk that the Court or a jury will disagree, and instead determine that Sterling's conduct was not "willful' within the meaning of the FCRA. The risk of not establishing liability is another important factor weighing in favor

of final approval.

          5.        The Risks of Establishing Damages

Even if Plaintiffs were to overcome the liability obstacles, there are also risks in proving damages at trial.  The determination of damages in a case like this - like the determination of liability - is a complicated and uncertain process, often involving conflicting opinions.  Here, the statutory damages being sought were in the range of $100 to $1000 per Class member.  15 U.S.C. § 1681n(a) ("Any person who willfully fails to comply . . . with respect to any consumer is liable to that consumer [for] . . . actual damages . . . or damages of not less than $100 and not more than $1,000.").  Under the Settlement Agreement, Plaintiffs have secured a result which comes close to the minimum range of damages without any risk.  While the maximum result would certainly exceed the value created by the proposed settlement, it would also require Plaintiffs and the Class to surmount the "willful" standard imposed by the Act and to demonstrate that Sterling's conduct warranted the imposition of the higher statutory range.  Further, simply prevailing on liability would not necessarily result in awards to all Class members for the full amount of statutory damages allowable under the statute.  Other factors might come into play, such as frequency and persistence of noncompliance, nature of noncompliance, resources of the Defendant, the number of persons adversely affected and the degree to which the noncompliance was intentional.

All things considered, the risks of establishing damages is yet another reason to grant final approval.  The proposed settlement obviates the litigation risk to the Class and secures an economic benefit to the Class that is reasonable and fair relative to the statutory penalty that might be obtainable after protracted discovery and a trial.  In addition to the monetary relief, Sterling has agreed to cease the practice complained of, and forever refrain from such practice -

a great benefit to the Class.

6.     The Risks of Maintaining the Class Action Through Trial

At this  time, there is no reason to think that this case could not have been maintained as a class action through trial.  Nevertheless, there is always some risk of decertification in any class action.  The risk of decertification here is no more substantial than the risk in any class action.  Therefore, this <u>Girsh</u> factor is neutral.

7.     The Ability Of The Defendant To Withstand A Greater Judgment

There is no evidence regarding Sterling's ability (or inability) to withstand a greater judgment.  As such, this factor is neutral.

8.     The Range of Reasonableness of the Settlement in Light of the Best Possible Recovery

"The reasonableness of a proposed settlement depends in part upon a comparison of the present value of the damages the plaintiffs would recover if successful, discounted by the risks of not prevailing."  <u>Boone</u>, 668 F. Supp. 2d at 712 (citing <u>In re General Motors</u>, 55 F.3d at 806).  Here, in light of the serious questions of fact and law presented by this case, the value of the proposed settlement is well within the range of reasonableness.

The proposed settlement is a good  result for the Class members when considered in light of the disputed liability, the statutory damages claim, the statutory cap on damages, and the fact that the settlement results in no release of actual damages (although, as noted earlier, it extinguishes any rights of Class members to pursue punitive damages).  Here, the statutory damages for a willful violation of the FCRA are capped at $1,000, and a  consumer may only secure such an award if he or she proves that a defendant consumer reporting agency willfully (as opposed to negligently) violated the FCRA.  <u>See</u> 15 U.S.C. §1681n(a).  Even if the Plaintiffs

were to prevail on their FCRA claims at trial, there is no assurance that a jury would award the maximum of $1,000 to each Class member. An award is by no means certain, given the statutory factors that have to be taken into account in making such an award – frequency and persistence of noncompliance with the statute; nature of the noncompliance; and the extent to which noncompliance was willful or negligent. See 15 U.S.C. § 1681n(a) and § 1681o(a). Viewed in context, the proposed settlement avoids the risks of litigation and secures what is arguably the maximum relief obtainable for each Plaintiff, after protracted discovery and a trial.[8] The aggregate negotiated cash Settlement Fund of $975,000.00 is a significant sum, and is in line with the upper range of such actions. See, e.g. Stoner v. CBA Information Services, 352 F. Supp. 2d 549 (E.D. Pa. 2005) ($772,500 settlement for class of consumers who disputed errors in their credit reports finally approved as fair, adequate and reasonable).

The fairness of the settlement is also underscored by the fact that each Class member will be entitled to recover his or her share of statutory damages, and still be permitted to pursue claims for actual damages if he or she has any. The goal of this case - to seek monetary redress for the Class - has been met. Just as important, if not more so, the settlement has resulted in Sterling's cessation of the allegedly unlawful practice. As such, the settlement provides a societal benefit as well.

---

[8] Here, given the projections offered by counsel, it is likely that each claiming Class member will receive between $500 and $1000 under the settlement. See Mot. for Final Approval at 6. Although there are not many reported decisions concerning FCRA class action settlements, this return appears to be quite favorable when considered in light of the nature of the Class members' claims and in light of other class action settlements under the Fair Debt Collection Practices Act, which - like the FCRA - is a consumer protection statute with a $1000 cap for statutory damages. Compare Oslan v. Law Offices of Mitchell N. Kay, 232 F.Supp.2d 436 (E.D. Pa. 2002) ($62 per class member); Saunders v. Berks Credit and Collections, Inc., No. 00-3477, 2002 U.S. Dist. LEXIS 12718 (E.D. Pa. July 12, 2002) ($62.54 per member).

A trial of the FCRA claims could have lasted for several days, and perhaps involve lengthy expert testimony. In any case, the expense of a trial would have been substantial. Moreover, in light of the novel legal issues and the highly contested nature of liability, it is likely that any judgment entered would have been the subject of post-trial motions and appeals, further prolonging the litigation, increasing its expense and reducing the potential value of any recovery. Thus, a settlement is advantageous to all concerned.[9]

> 9. The Range of Reasonableness of the Settlement to a Possible Recovery in Light of all the Attendant Risks of Litigation

Essentially, this factor is an amalgam of the analysis described above. As set forth above, the Court's analysis of the relevant factors demonstrates that the settlement fits well within the range of reasonableness. When the risks of liability and damages are considered in light of the total potential recovery, this settlement is a good result for the Class. As discussed above, the settlement provides a substantial benefit for the Class, and ensures that every Class member has the opportunity to obtain a significant statutory damages award and pursue a claim for actual damages if warranted. This settlement allows Plaintiffs to avoid the risks of further litigation, described above, and facilitates Plaintiffs' immediate receipt of benefits. The Court concludes that the proposed settlement is well within the range of reasonableness and therefore grants final approval of the settlement under Rule 23(e).

> E. Attorneys' Fees

Under the Settlement Agreement, Sterling agreed to pay, subject to the Court's approval, attorneys' fees, costs, and out-of-pocket expenses, provided that it not exceed 35% of the

---

[9] No final adjudication has been made as to the validity of Plaintiffs' claims, and Sterling continues to deny all liability and allegations of wrongdoing. If the case were to continue, some or all of Plaintiffs' claims could have been dismissed in connection with dispositive motions. This uncertainty also weighs in favor of approving the proposed settlement.

settlement fund. Sterling also has provided the claims management and has funded the costs of notice and settlement administration. Furthermore, subject to the Court's approval, Sterling has agreed to an individual settlement award of $1,000.00 to Mr. Serrano. The Notice published to Class members expressly informed them that counsel would apply for an award of attorneys' fees of $340,900.00. To date, no Class member has objected to the settlement or to the requested fee, which evidences both a satisfactory result and a reasonable fee.

Class counsel now, as compensation for their achievement and effort, and for accepting the risk that there would be no recovery if they were not successful, request the Court to approve the portion of the settlement providing for attorneys' fees and costs of $340,900.00. This is an amount that is within the range contemplated and agreed to in the settlement agreement. In support of their motion for fees and reimbursement of costs and expenses, counsel rely upon the declarations summarizing counsel's time and the expenses incurred on behalf of the Class. <u>See</u> Declarations of James A. Francis and David A. Searles , Mot. For Fees, Expenses and Award to Representative Plaintiff, at Appendices 1 and 2.

      1.     The reasonableness of fees

An award of attorneys' fees is a discretionary matter, considering the unique factors of the case. <u>See</u> <u>In re Computron Software</u>, 6 F. Supp. 2d 313, 321-23 (D.N.J. 1998); <u>In re Prudential Ins. Co. Am. Sales Litig.</u>, 148 F.3d 283, 338 (3d Cir. 1998). There are two conventional methods of calculating attorneys' fees in class actions – the percentage of recovery method and the lodestar method. <u>See</u> <u>In re Prudential</u>, 148 F.3d at 332-33. The percentage-of-recovery method is often favored in cases involving a common fund, because it rewards counsel for success and penalizes counsel for waste or failure. <u>In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.</u>, 55 F.3d 768, 821 (3d Cir. 1995).

Meanwhile, the lodestar method is more commonly applied in statutory fee-shifting cases. Id.;

Charles v. Goodyear Tire & Rubber Co., 976 F.Supp. 321, 323 (D.N.J. 1997).

Here, there is an entitlement to attorneys' fees and costs pursuant to the Fair Credit

Reporting Act ("FCRA"), a fee-shifting statute. 15 U.S.C. § 1681n(a)(3). As discussed below,

the Court concludes that the amount of requested fees is reasonable regardless of which method

(that is, the percentage-of-recovery method or the lodestar method) is used to calculate them.

See In re Ikon Office Solutions, Inc., 194 F.R.D. at 193; Perry v. FleetBoston Fin. Corp., 229

F.R.D. 105, 119 (E.D. Pa. 2005) ("Neither method is mandatory [in an FCRA case], leaving the

district court with a wide range of discretion when selecting which method to employ.").[10]

.          2.          Percentage-of-Recovery Method

As noted in the Settlement Agreement and memoranda supporting preliminary and final

approval, Sterling has provided a cash fund of $975,000.00 for the benefit of Class

---

[10] At the fairness hearing, defense counsel stated that they disagreed with the assertion of
Plaintiffs' counsel that the percentage-of-recovery method was favored in cases like this one, as
opposed to the lodestar method. See Hr'g Tr. at 25-33. Nevertheless, defense counsel agreed to
pay the requested fees as specified in the Settlement Agreement. See id. The Court has
reviewed the recent caselaw provided by the parties, and acknowledges that it may well be that
the percentage-of-recovery method is favored for cases such as this. See In re AT&T Corp., 455
F.3d 160, 164 (3d Cir. 2006); In re Cendant Corp. Prides Litig., 243 F.3d 722, 734, 737 n. 20 (3d
Cir. 2001); Boone, 668 F. Supp. 2d at 713 ("Class counsel in a class action who recovers a
common fund for the benefit of persons other than himself or his client is entitled to a fair and
reasonable award of attorneys' fees from the fund as a whole.") (citing Boeing Co. v. Van
Gemert, 444 U.S. 472, 478 (1980)); Oh v. AT&T Corporation, 225 F.R.D. 142, 151-54 (D.N.J.
2004); In re Ikon Office Solutions, Inc. Sec. Litig., 194 F.R.D. 166, 193 (E.D. Pa. 2000)
(citations omitted). See also Sprague v. Ticonic Nat'l Bank, 307 U.S. 161, 166-67 (1939);
Dardovitch v. Haltzman, 190 F.3d 125, 146 (3d Cir. 1999). That being said, other courts have
used the lodestar method in the context of FCRA cases. See Perry, 229 F.R.D. at 123; Ciccarone
v. B.J. Marchese, Inc., No. 03-1660, 2004 U.S. Dist. LEXIS 25747, at *16 (E.D. Pa. Dec. 22,
2004); see also Brytus v. Spang & Co., 203 F.3d 238, 243-44 (3d Cir. 2000).
        The Court need not decide this issue, because Sterling has agreed to pay the amount of
requested fees, and because the amount of requested fees is appropriate and reasonable
regardless of which method is used for calculation.

member claimants, and to satisfy the attorney's fees and costs and the payment to Mr. Serrano. Sterling has also undertaken to pay approximately $13,000 for the costs of notice and claims administration, and has agreed to stop the challenged practice. Based upon these sums, it is clear that the settlement provides for an aggregate value of approximately $1,000,000.00.

There are several factors that a district court considers when setting percentage attorney fee awards in percentage-of-recovery cases: (1) the amount of the value created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiff's counsel; (7) the awards in similar cases; (8) the value of benefits attributable to the efforts of class counsel relative to the efforts of other groups; (9) the percentage fee that would have been negotiated had the case been subject to a private contingent fee arrangement at the time counsel was retained; and (10) any innovative terms of settlement. In re Diet Drugs Product Liability Litigation, 582 F.3d 524, 541 (3d Cir. 2009); Gunter v. Ridgewood Energy Corporation, 223 F.3d 190, 195 n.1 (3d Cir. 2000)). This is not an exhaustive list. The Third Circuit Court of Appeals also has noted several other factors, stating that "[w]hat is important is that the district court evaluate what class counsel actually did and how it benefitted the class." In re Prudential Ins. Co. of Am. Sales Practice Litig. Agent Actions, 148 F.3d 283 at 338, 342. Moreover, "fee award reasonableness factors 'need not be applied in a formulaic way' because each case is different, 'and in certain cases, one factor may outweigh the rest.'" AT&T Corp., 455 F.3d at 166 (citing In re Rite Aid Corp. Sec. Litig., 396 F.3d 294, 301 (3d Cir. 2005) (internal quotations omitted)).

Counsel's requested fee is reasonable here under all important factors. First, the amount

of the value created and the number of persons benefitted supports the fee request. While this may not be a "megafund" case, it is nonetheless a substantial value achieved on behalf of the Class, whose members will receive significant benefits. In fact, cases generating comparatively smaller funds can require a higher percentage fee award, due to the perception that large percentages of very large settlements lead to windfalls for attorneys. See In re Prudential Ins. Co. of Am. Sales Litig., 148 F.3d at 339 (noting "inverse relationship" of large settlement to smaller percentage award); Report of the Third Circuit Task Force, 108 F.R.D. 237, 256 (1985) (suggesting that fee percentages may decrease as awards increase).

Second, there have been no objections to the settlement or to the attorneys' fees request. This factor supports approval. See Barel v. Bank of America, 255 F.R.D. 393, 404 (E.D.Pa. 2009) (lack of objections by class members favors approving the request for attorneys' fees).

Third, counsel's skill and apparent efficiency supports approval. The quality of representation is measured by "the quality of the result achieved, the difficulties faced, the speed and efficiency of the recovery, the standing, experience and expertise of the counsel, the skill and professionalism with which counsel prosecuted the case and the performance and quality of opposing counsel." In re Ikon Office Solutions, Inc., 194 F.R.D. at 194 (internal quotations omitted). Here, Class counsel brought a case articulating a theory of class recovery that Sterling vigorously challenged through a detailed motion to dismiss. After successfully defeating this motion, Class counsel took discovery relating to Sterling's corporate practices and took the deposition of Sterling's Rule 30(b)(6) corporate representative. Counsel appear to have a wide range of experience in consumer class action litigation, based on the information set forth in their respective Declarations. Indeed, counsel have been certified to represent consumer classes many times, by this Court and others. All things considered, this factor weighs in favor of

approval.

Fourth, the complexity and duration of the litigation supports approval of the proposed settlement. While the litigation to date has been perhaps of medium length, counsel has explained that many hours of effort were expended in investigation, written discovery, depositions, substantive and dispositive motions and negotiations. This case involves potentially complicated issues of liability and damages which, if pursued, could involve additional lengthy, expensive litigation between the parties. Resolution via settlement is preferable in many respects, and counsel should be compensated for their substantial efforts in achieving settlement.

Fifth, the factor regarding the risks of nonpayment, is neutral.

Sixth, the amount of time devoted to the case by Class counsel favors approving counsel's request for fees. Counsel reportedly worked 660.6 hours on the case, largely devoted to responding to the motion to dismiss filed by Sterling, the ensuing discovery, the deposition practice involving Sterling's Rule 30(b)(6) corporate representative, two days of mediation, and settlement negotiations.[11] All of the hours spent on this case appear to have been essential to the favorable result obtained; accordingly, this factor supports the requested fee award.

Seventh, an examination of fee awards in similar cases weighs in favor of approving the request for attorneys' fees. When considering the awards in similar cases, the Court looks to cases of similar size, and not necessarily similar subject matter. See In re Cendant Corp. Prides Litig., 243 F.3d at 737. Here, on both fronts, the percentage being sought is in the appropriate range. Plaintiffs request attorneys' fees of $327,145.83, which is roughly 33.1% of the range of

---

[11] The settlement negotiations, in particular, required a number of meetings and conference calls between the parties, confirmatory depositions and the exchange and revisions of numerous draft settlement documents.

value achieved for the Class.[12]

Eighth, an examination of the value of benefits attributable to the efforts of Class counsel relative to the efforts of other groups supports approval. The entirety of the value achieved for the Class was attributable to Class counsel; no other groups, such as government agencies conducting investigations, were involved in this case.

Ninth, the factor concerning the percentage fee that would have been negotiated had the case been subject to a private contingent fee arrangement, does not apply to this case.

Tenth, an examination of the innovative terms of the settlement, supports approval. Class counsel have obtained a cessation of a practice considered detrimental to the interests of consumers and employment applicants. Counsel have also achieved a limited release, so as to preserve for Class members the ability and the option to bring separate cases for actual damages.

The request for an award of fees and costs, as calculated as a percentage of the value of the benefit achieved for the Class, is reasonable under all the applicable factors of a percentage

---

[12] Plaintiffs calculate the minimum value achieved for the Class as the sum of the available benefit of $974,000, plus the costs of notice and claims administration which Sterling is paying for a total minimum benefit of $987,000.00. The requested fee award of $327,145.83 is approximately 33.1% of that value. This calculated benefit does not include the intangible value of Sterling's agreement to change its practices. If these benefits were quantifiable, that would result in the percentage being lower.

Recently, another court in this District took note of a study of class action fee awards within the Third Circuit Court of Appeals, and determined that the average attorney's fees percentage in such cases was 31.71% and that the median fee award was 33.3%. See Boone, 668 F. Supp. 2d at 714 (internal citations omitted). According to these numbers, the fee award being sought in this case is within the acceptable range. Also, the fee requested here virtually mirrors the award in the most comparable case in this District, as far as its subject matter. See Stoner v. CBA Information Services, LLC, 352 F. Supp. 2d 549 (E.D. Pa. 2005) (33% fee approved in FCRA class action premised upon consumer reporting agency's failure to properly investigate disputes).

analysis.

        3.      Lodestar Analysis

The request for an award of fees is also reasonable under a lodestar analysis. Under the lodestar method, the Court calculates attorneys' fees by multiplying the number of hours spent on the litigation by an appropriate hourly rate. See In re General Motors, 55 F.3d at 819 n. 37; Barel v. Bank of America, 255 F.R.D. 393, 403 (E.D. Pa. 2009). Pennsylvania law allows a court to increase or decrease the lodestar fee in light of the quality of work performed and the contingencies involved. Pa. R. Civ. P. 1716(5); In re Prudential Ins. Co. of Am. Sales Practice Litig. Agent Actions, 148 F.3d at 341; Signora v. Liberty Travel, Inc., 886 A.2d 284, 292-93 (Pa. Super. 2005) (enhancement for contingency is permissible under Pennsylvania law).

The lodestar and expenses for counsel here, as broken down in counsels' respective Declarations, is as follows: for Francis & Mailman, P.C., $153,230.00 for over 508.4 hours of attorney and paralegal time, and, for Donovan Searles, LLC, $79,755.00, for over 152.2 hours of attorney and paralegal time. Time for all counsel totals $232,985.00. This figure is further analyzed below.

        a.      Hourly Rates

The hourly rates for the firms of Class counsel are well within the range of what is reasonable and appropriate in this market. The hourly rates for the attorneys in the firms are the same as the regular current rates charged for their services in their standard non-class matters, including both contingent and noncontingent matters. There has not been any alteration or deviation from the firms' hourly rates to account for added complexity or increased risk factor of this action. The attorneys concentrate their practice in the area of consumer protection litigation, and their hourly rates (ranging between $290.00 and $650.00) are within the range charged by

attorneys with comparable experience levels for consumer class action litigation of a similar nature.[13]

          b.      Hours Expended

In support of the  motion for fees and reimbursement of costs and expenses, counsel have submitted many pages of detailed, contemporaneously produced time records specifying the date of work performed, the attorney performing the work, the nature of the work, the amount of time spent and the hourly rate charged for the tasks.  Included in the time records are reasonable estimates of the time expected to be spent on the case after the date of this motion.  This submission is sufficiently specific for a party seeking attorneys' fees.  Counsel's Declarations also set forth the basis for the division of labor among the firms and their efforts to litigate the case in an efficient manner.  After reviewing the Declarations, it appears that no counsel is requesting compensation for any time that was "excessive, redundant, or otherwise unnecessary."  Hensley v. Eckerhart, 461 U.S. 424, 434 (1983).

          4.      Multiplier in this Case

Here, class counsel's requested fee produces a multiplier of 1.4, which is well within the reasonable multiplier range for fees awarded in this jurisdiction.  See In re Prudential Ins. Co. of Am. Sales Practice Litig. Agent Actions, 148 F.3d at 341 (noting that multipliers ranging from 1 to 4 are frequently awarded); Boone, 668 F.Supp. 2d at 714 (approving a fee award carrying a multiplier of 2.3); In re Rite Aid Corp. Sec. Litig., 146 F. Supp.2d 706, 736 n. 44 (E.D. Pa. 2001) (approving multipliers "in the range of 4.5 to 8.5").  Further, the multiplier is appropriate when considered within the context of this case, as set forth below.

---

[13]  The rates charged for law clerks and paralegals are between $125.00/hour and $225.00/hour, which is reasonable under the circumstances.

5.    Factors to Consider When Awarding Fees

One factor for the Court to consider in awarding fees is the contingent nature of the litigation.  Lindy Bros. Builders, Inc. of Philadelphia v. American Radiator & Standard Sanitary Corp., 487 F.2d 161, 168 (3d Cir. 1973).  Here, Class counsel was retained on a completely contingent basis.  Class counsel were unable to mitigate any of the risk of nonpayment; instead, they were required to spend or incur obligations to effectively litigate this case.  Class counsel undertook a substantial commitment of time and money to prosecute this class action, while the Class itself risked nothing out-of-pocket.

As noted earlier, Class counsel are qualified to handle this case, and they obtained a laudable result for the class.  The settlement results in a cash recovery that is in the range of the maximum Plaintiffs could achieve if they prevailed at trial, *without* any release of their right to pursue actual damages; in addition, Sterling has ceased the conduct complained of by Plaintiffs. No objections or opt-outs to the settlement were filed.  Given the nature of the litigation, the complicated and first-impression issues involved, the risks faced and the quality of the work performed, a 1.4  multiplier of the lodestar of Class counsel represents an appropriate level of compensation for the success Class counsel achieved and the requested fee is reasonable in relation to the benefit achieved.

Some courts have raised a concern in consumer protection cases as to whether the requested fee is reasonable in light of the amount of the sums earmarked for Class members. However, the mere fact that the statutory cap of $1,000 (and the parties' agreement to incorporate that cap into the settlement) may not be a great sum in relation to Plaintiffs' fee request, does not make the fee request unreasonable.  Because Plaintiffs prevailed on the only claims raised in the Complaint, the fee award will not be diminished to maintain some ratio

between the fee and the damages[14] - particularly because here, the named plaintiff has achieved a future benefit for the Class in addition to monetary compensation.[15]

F.    Reasonable Expenses

The efforts of Class counsel have resulted in substantial common benefits to the class. In doing so, Class counsel incurred out-of-pocket expenses in the aggregate amount of $13,745.47, for filing, postage, travel, research and copying costs.  See Declarations, Appendices 1 and 2 to motion for fees and reimbursement of costs and expenses.  After reviewing counsel's itemization of these costs, the Court determines that they are reasonable in light of the nature of the action and the tasks that needed to be performed.  Therefore, the Court approves the reimbursement of counsel's reasonable expenses.

G..   Individual Settlement Award

Class counsel also seeks this Court's approval of a $1000.00 individual settlement

---

[14]  See Washington v. Philadelphia County Court of Common Pleas, 89 F.3d 1031, 1041-42 (3d Cir. 1996) (declining to diminish fee award on grounds of proportionality between attorneys' fees and amount of damages); Sheffer v. Experian Information Solutions, Inc., 290 F.Supp. 2d 538, 550-51 (E.D. Pa. 2003) ("proportionality analysis between the amount of damages awarded and the amount of counsel fees requested … is an impermissible basis upon which to reduce a fee award") (internal citations omitted).

[15]  Under fee-shifting statutes such as the FCRA, the amount of attorney fees awarded is not required to be proportionate to the amount of damages recovered.  This is to encourage private counsel to enforce important consumer rights legislation.  Noting that Congress contemplated that civil plaintiffs would act as private attorneys general, the Third Circuit Court of Appeals has stated:

> Congress provided fee shifting to enhance enforcement of important civil rights, consumer protection, and environmental policies.  By providing competitive rates we assure that attorneys will take such cases, and hence increase the likelihood that the congressional policy of redressing public interest claims will be vindicated.

Student Public Interest Research Group of New Jersey v. AT&T Bell Laboratories, 842 F.2d 1436, 1449 (3d Cir. 1988).

award for Plaintiff Gary Serrano, for his willingness to undertake the risks of this litigation and shoulder the burden of such litigation. The Court recognizes that there would be no benefit to Class members if the Class representative had not stepped forward. Mr. Serrano devoted time and energy to the litigation, consulting with counsel as necessary, and fulfilled his obligations as Class representative. The requested $1000.00 award is well within the range of awards made in similar cases. See Perry, 229 F.R.D. at 118 (awarding $5,000 each to three separate representatives, and citing cases); In re Greenwich Pharmaceuticals Securities Litig., No. 92-3071, 1995 U.S. Dist. LEXIS 5717 at *20 (E.D. Pa. Apr. 26, 1995) (awarding $5,000 incentive awards to five class plaintiffs); In re SmithKline Beecham Corp. Sec. Litig., 751 F. Supp. 525, 535 (E.D. Pa. 1991) (awarding $5,000 to each representative plaintiff). Also, Class members were notified that Class counsel would request an award for Mr. Serrano in this amount, and no Class member objected. Therefore, the Court approves the award of $1,000.00, which represents appropriate recognition of the benefit of the settlement that Mr. Serrano and his counsel have achieved for the Class.

III. CONCLUSION

For all the foregoing reasons, the Court grants final approval to the proposed settlement, and awards reasonable attorneys' fees and reimbursement of expenses in the total amount of $340,900.00, and the sum of $1,000.00 to the Class Representative Gary Serrano. An Order consistent with this Memorandum follows.

BY THE COURT:

S/Gene E.K. Pratter
GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE